(No. 51003.—

KERASOTES RIALTO THEATER CORPORATION *et al.*, Appellees, v. THE CITY OF PEORIA *et al.*, Appellants.

*Opinion filed November 21, 1979.*

CLARK, J., concurring in part and dissenting in part.

David L. Thomas and Brian M. Nemenoff, of Peoria, for appellants.

Cassidy, Cassidy, Mueller & Price, of Peoria (Richard D. Price, Jr., of counsel), for appellees.

MR. JUSTICE RYAN delivered the opinion of the court:

This is a direct appeal to this court under Rule 302(b) (58 Ill. 2d R. 302(b)) from an order of the circuit court of Peoria County declaring the city of Peoria tax on admissions to amusements unconstitutional.

On October 22, 1976, plaintiffs, who are principally owners of theaters in Peoria, filed a complaint for declaratory judgment challenging the validity of an ordi-

nance of the city of Peoria (a home rule city) imposing a 2% tax on admissions to amusements. The ordinance placed the incidence of the tax on the consumer. The complaint alleged *inter alia* the unconstitutionality of four categories of exemptions from the tax. On November 9, 1976, the Peoria city council amended the ordinance, deleting the four categories of exemptions and providing in the amended ordinance for two categories of exemptions. Plaintiffs then filed an amended complaint seeking relief covering two periods of time, namely, (1) from August 31, 1976, to November 9, 1976 (the period during which the original ordinance was in effect), and (2) after November 9, 1976 (the period the amended ordinance was in effect). After the trial court's decision on June 9, 1978, holding the ordinance invalid, the Peoria city council passed a new ordinance imposing its admissions tax. The new ordinance is not involved in this litigation.

The amended complaint was in six counts. Count I alleged that the tax was in fact a nonuniform special assessment and therefore invalid. Count II alleged that the ordinance in effect from August 31, 1976, to November 9, 1976, contained arbitrary and discriminatory exemptions. Count III alleged that after November 9, 1976, the amended ordinance was administered in an arbitrary and discriminatory manner. Count IV alleged that the ordinance in effect after November 9, 1976, contained arbitrary and discriminatory exemptions. Count V alleged that as applied and enforced after August 31, 1976, the ordinance was in fact an illegal occupation tax. Count VI alleged that a home rule unit has no authority to assess a tax against certain basic human rights—the right to witness an amusement. The trial court granted the defendants' motion for summary judgment as to count I (special-assessment theory) and count VI (basic-human-rights theory). Following a hearing on the remaining counts, the circuit court entered judgment in favor of the plaintiffs,

holding the ordinance to be unconstitutional. The defendants appealed from the order declaring the ordinance unconstitutional and the plaintiffs cross-appealed from the summary judgment order as to counts I and VI.

The ordinance enacted August 31, 1976, provided:

"(a) There is hereby levied and imposed upon privilege of participating in or witnessing an amusement within the City of Peoria a tax of two percent (2%) of the admission fee charged to said amusement exclusive of other state or federal taxes; provided however, that said tax shall not apply to or be imposed upon the privilege of participating in or witnessing of any amusement the proceeds of which, after payment of reasonable expenses, inure exclusively to the benefit of:

(1) not-for-profit religious, educational, charitable institutions, societies or organizations; or

(2) societies or organizations maintained for the prevention of cruelty to children or animals; provided, however, that no part of the net earnings under Paragraphs (1) and (2) inure to the benefit of an owner;

(3) governmental units, boards, commissions and bodies duly organized under the laws of the City of Peoria, State of Illinois or United States of America;

(4) a resident society, organization, association, corporation, entity or person advancing the cultural interests of the City of Peoria through the local production of live theatrical and dramatic presentations to a seated audience of any open-air or enclosed theater, auditorium or the like which has a seating capacity, including balconies, not exceeding 700 persons.

(b) The ultimate incidence of and liability for payment of said tax shall be borne by the person who seeks participation or admission to any such amusement, said person hereinafter referred to as 'consumer'.

(c) The tax herein levied shall be paid in addition to any and all other taxes and charges. It shall be the duty of the owner, manager or operator of every amusement in the City to act as trustee for and on account of the City,

and to secure said tax from the consumer and pay over to the City Comptroller said tax under procedures prescribed by the City Comptroller or as otherwise provided in this ordinance.

(d) Every person required to collect the tax levied by this ordinance shall secure said tax from the consumer at the time he collects the admission or participation fee charged for the amusement. Upon the invoice receipt or other statement or memorandum of the rent given to the renter at the time of payment, the amount due under the tax provided in this ordinance shall be stated separately on said documents."

On November 9, 1976, after the complaint was filed, that part of paragraph (a) of the ordinance set out above, which provided for the exemptions from its application, was amended so that there were only two subparagraphs providing for exemptions:

"(1) not-for-profit religious, educational, or charitable institutions, societies or orgainzation, provided, however, that no part of the net earnings are retained or retainable by the owner.

(2) grammar, junior high and high schools located within the City of Peoria."

It is contended by the plaintiffs that the four exemptions from the tax contained in the original ordinance, and the two exemptions contained in the amended ordinance are unreasonable, arbitrary and not related to the purposes of the ordinance. This court, in *Williams v. City of Chicago* (1977), 66 Ill. 2d 423, 432-33, summarized the general principles of law relating to classification for purposes of taxation, stating:

"It is well established that legislative bodies have very broad powers in establishing classifications defining the objects of taxation which will withstand constitutional attack so long as the classifications are reasonable. [Citations.] The legislative determination as to those persons who are to be taxed and those not taxed must not be

> arbitrary [citation], and the classification must bear some reasonable relationship to the object of the legislation [citation]. However, it is equally well settled that there is a presumption favoring the validity of classifications made by legislative bodies in taxing matters and that one who attacks them has the burden of proving such classifications to be arbitrary and unreasonable. [Citations.]"

The plaintiffs acknowledge that they have the burden of proving the classifications to be arbitrary and unreasonable but state they have met this burden, contending that the record establishes that there is no administrative, fiscal or accounting justification for the exemptions. While plaintiffs presented evidence to this effect, they have not established the invalidity of the classifications contained in the two ordinances.

Although the tax is placed on the consumer, the exemptions are based on the nature of the entity to which the net proceeds of the amusement inures. This court has, on several occasions, upheld classifications where the exemptions have taken their character from an entity other than that upon which the incidence of the tax has been placed. In *People ex rel. Holland Coal Co. v. Isaacs* (1961), 22 Ill. 2d 477, this court considered the validity of exemptions contained in the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1953, ch. 120, par. 441). Although the incidence of the tax was placed upon the retailer, the exemptions were based upon the nature of the purchaser. These exemptions were granted primarily to governmental, religious and charitable bodies. In *Jacobs v. City of Chicago* (1973), 53 Ill. 2d 421, this court considered an ordinance of the city of Chicago which, as in this case, placed the incidence of the tax upon the consumer (upon the use and privilege of parking a motor vehicle in or upon any parking lot or garage). However, certain exemptions

from the tax were based upon the nature of the parking facility in which the vehicle was parked. In *Williams v. City of Chicago* (1977), 66 Ill. 2d 423, this court upheld an ordinance which placed the incidence of the tax upon the lease of personal property but defined the types and categories of personal property the lease of which was subject to the tax so that the leasing of many types of personal property was not subject to the tax. Therefore the exemptions in the ordinance of the city of Peoria, based upon the nature of the entity to which the proceeds of the amusement inures, are not objectionable if such classification is otherwise reasonable.

The exemptions set out in the amended ordinance are classifications that essentially parallel those exemptions contained in the Revenue Act of 1939 (see Ill. Rev. Stat. 1975, ch. 120, par. 500.1 *et seq.*), which are authorized by article IX, section 6, of the Illinois Constitution of 1970. The classifications contained in the August 31, 1976, ordinance, though broader than those contained in the later amended ordinance, nonetheless are limited to entities which provide services and perform functions similar in nature to those of the entities exempt from taxation under the Revenue Act of 1939. They are not commercial enterprises but are governmental and non-governmental organizations the purposes of which are to serve, benefit and improve the community in general. Thus, there is a difference between the organizations stated in the exemptions and those that are generally delegated to collect the tax from the consumer and pay it over to the city, and this difference would appear to constitute a basis for classifying the exempt bodies differently from the others.

Placing the consumers of these exempt bodies in a different class from the patrons of other amusements and exempting these consumers from taxation would appear to be reasonable. There was evidence presented in the trial

court that those who attend functions presented by the exempt bodies often do so not only for the purpose of entertainment, but also for the purpose of supporting the organization presenting the amusement. This may not be universally true; however, the evidence shows that it is not uncommon.

Although the tax is on the consumer, the ordinance places substantial obligations upon the organization which furnishes the amusement. It must collect the tax from the consumer, hold it as trustee for the city, and pay it over to the city at specified times. These duties involve a certain amount of bookwork, administrative duties and financial burdens which the city has seen fit not to impose upon the exempt organizations. These organizations perform many functions and services which the city itself might otherwise be called upon to furnish. By relieving these exempt bodies from the burden of collecting, paying over and accounting for the tax, the city could well have reasoned that more effort and money could thereby be devoted to the beneficent purposes of the organizations.

Because of these differences, which we find to constitute a reasonable basis for the classifications contained in the ordinances, we hold that the plaintiffs have not sustained the burden of establishing that the classifications were arbitrary or unreasonable. We find that the trial court's holding that the classifications were unreasonable was against the manifest weight of the evidence.

It is contended that the manner in which the amended ordinance was administered was arbitrary, capricious and unreasonable. It is contended that after the ordinance was amended the city continued to not collect the tax from the organizations that were formerly exempt under the original ordinance. This, it is argued, resulted in an unequal application of the tax. The plaintiffs rely upon *Yick Wo v. Hopkins* (1886), 118 U.S. 356, 30 L. Ed. 220, 6 S. Ct. 1064, where the court considered an ordinance of the city

of San Francisco which was enforced in a discriminatory manner. The case involved a writ of *habeas corpus.* The petitioner had applied for a permit to conduct his laundry business but the application was refused, although all of the requirements had been complied with. The petitioner had been arrested for conducting his laundry business without a permit. The Supreme Court held that the arbitrary denial of the permit to the petitioner and also the denial of permits to about 200 other Chinese, while granting permits to 80 others who were not Chinese, constituted illegal discrimination and a denial of equal protection.

*Yick Wo* is recognized as the landmark case on arbitrary application and enforcement of laws. However, subsequent decisions of the Supreme Court and the application of *Yick Wo* in State and lower Federal courts have refined the doctrine of that case. It is now generally recognized that the doctrine reaches only intentional or purposeful discrimination. Mere laxity in enforcement does not constitute a denial of equal protection. There must be some conduct which, in effect, amounts to an intentional violation of practical uniformity. (*Sunday Lake Iron Co. v. Township of Wakefield* (1918), 247 U.S. 350, 62 L. Ed. 1154, 38 S. Ct. 495; *Mackay Telegraph & Cable Co. v. City of Little Rock* (1919), 250 U.S. 94, 63 L. Ed. 863, 39 S. Ct. 428; Tieger, *Police Discretion and Discriminatory Enforcement,* 1971 Duke L.J. 717, 724-29; Comment, *The Right to Nondiscriminatory Enforcement of State Penal Laws,* 61 Columbia L. Rev. 1103, 1113-15 (1961).) Although the evidence in our case may indicate laxity in the enforcement of the Peoria amusement tax ordinance, the plaintiffs have not established the intentional or purposeful discrimination necessary to the application of the *Yick Wo* doctrine. In *Jacobs v. City of Chicago* (1973), 53 Ill. 2d 421, 427, this court held that the failure to apply the taxing ordinance uniformly would

not render the ordinance in that case invalid.

It is also contended that the Peoria amusement tax is in fact an illegal occupation tax. Article VII, section 6(e), of the Illinois Constitution of 1970 permits a home rule unit of local government to impose taxes upon occupations only as provided by the General Assembly. This same argument was urged in challenging the validity of the Chicago cigarette tax ordinance which this court considered in *S. Bloom, Inc. v. Korshak* (1972), 52 Ill. 2d 56. In that case it was held that the incidence of the tax was on the consumer, although the tax ordinance placed responsibility for collecting and remitting the tax on the wholesaler and retailer. The tax in that case was held not to be an occupation tax. This court has likewise sustained the validity of home rule tax ordinances against similar charges in *Paper Supply Co. v. City of Chicago* (1974), 57 Ill. 2d 553, and *Mulligan v. Dunne* (1975), 61 Ill. 2d 544. Also, in *Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d 10, an amusement tax ordinance of the town of Cicero, a home rule unit, was upheld. In that ordinance the incidence of the tax was not specifically placed upon the consumer as in our case, but was assessed on the basis of the number of individuals witnessing or participating in the amusement. Nonetheless, this court held that the tax was not a tax on an occupation. Under the previous decisions of this court, it is clear that the tax levied by the Peoria city ordinances was not a tax on an occupation.

The trial court granted summary judgment for the defendants on two counts. In count I of the amended complaint, it was contended that the tax was in fact a special assessment designed to finance Peoria's civic center. The ordinance does not specify that the proceeds from the tax are to be used for that purpose or for any specific purpose; thus the proceeds of the tax may be applied by the city council to any corporate purpose of the munici-

pality. The command of uniformity (Ill. Const. 1970, art. IX, sec. 2) governs the assessment and the collection of a tax and not the distribution of the proceeds. The rule applicable to the use of the proceeds requires that tax revenues be used for corporate purposes of the municipality levying the tax. (*Board of Library Directors v. City of Lake Forest* (1959), 17 Ill. 2d 277.) It is not argued here that an expenditure to finance the Peoria civic center would not be for a corporate purpose of the city of Peoria. Thus, although some, or even a substantial portion, of the proceeds from the amusement tax may be used to finance the civic center, that fact would not render the tax invalid. Plaintiffs here argue only that a material issue of fact existed which precluded the entry of summary judgment on count I, but they do not state what the material issue of fact is. We conclude that the trial court properly entered summary judgment in favor of the defendants on count I.

Count VI of the amended complaint alleged that the tax was a tax on a basic human right and is therefore invalid. This is a revenue not a license ordinance. It is an exercise of the power to tax given to a home rule unit by article VII, section 6(a), of the Illinois Constitution of 1970. It is a tax on the privilege of witnessing and participating in amusements. This court has upheld similar taxes on the privilege of purchasing cigarettes (*S. Bloom, Inc. v. Korshak*), on the privilege of parking automobiles (*Jacobs v. City of Chicago*), and on the privilege of leasing certain personal property (*Williams v. City of Chicago*). Under the Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, par. 482 *et seq.*), our homes are taxed, as is any real estate that may be used in earning a livelihood. This would seem to involve taxation of some rather basic rights. We see no merit in plaintiffs' contention and find that the trial court properly entered summary judgment in favor of the defendants on count VI.

For the reasons stated above, the judgment of the circuit court of Peoria County is reversed as to the judgment entered in favor of the plaintiffs on counts II, III, IV and V of the amended complaint and is affirmed as to the judgment entered in favor of the defendants on counts I and VI of the amended complaint.

*Affirmed in part and reversed in part.*

MR. JUSTICE CLARK, concurring in part and dissenting in part:

I am aware that the burden of proving classifications of a tax burden to be arbitrary and unreasonable is placed on the one who attacks the classifications (*Williams v. City of Chicago* (1977), 66 Ill. 2d 423, 433), and that the burden is a heavy one. The majority decision, however, effects two results: the burden is now an insurmountable one; and a court must go to any lengths in order to find classifications reasonable. The lengths gone to here defy reason, ignore the party bearing the incidence and burden of the tax, and contravene the 1970 Constitution.

There is no question that the "ultimate incidence of the tax [may be] imposed on the participant, observer or purchaser" of an amusement; in other words, an amusement tax may be levied on a consumer. (*Board of Education v. City of Peoria* (1979), 76 Ill. 2d 469, 474-75; and see cases there cited, including *Jacobs v. City of Chicago* (1973), 53 Ill. 2d 421, 424.) Clearly the ordinance attempts to do just that. The issue here focuses on the classes of amusement operators—"collectors" who are exempt from the burden of collection from the consumer-taxpayer. Section 2 of article IX of the 1970 Constitution provides:

> "In any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be

taxed uniformly. Exemptions, deductions, credits, re-
funds and other allowances shall be reasonable."

This court has frequently stated that legislative bodies have very broad powers to establish reasonable classifications in defining the subjects and objects of taxation. (*Williams v. City of Chicago* (1977), 66 Ill. 2d 423, 432; accord, *Klein v. Hulman* (1966), 34 Ill. 2d 343, 346.) "The legislative determination as to those persons who are to be taxed and those not taxed must not be arbitrary [citation], and the classification must bear some reasonable relationship to the object of the legislation." (*Williams v. City of Chicago* (1977), 66 Ill. 2d 423, 432.) "Such classification must, however, be based on real and substantial differences between persons taxed and those not taxed." *Klein v. Hulman* (1966), 34 Ill. 2d 343, 347.

Despite the presumption of validity of such legislation (*Williams v. City of Chicago* (1977), 66 Ill. 2d 423, 432; *Lehnhausen v. Lake Shore Auto Parts Co.* (1973), 410 U.S. 356, 364, 35 L. Ed. 2d 351, 358, 93 S. Ct. 1001, 1006), I believe the plaintiffs have successfully rebutted that presumption. The ultimate incidence of the tax is on the consumer. (For that reason I agree with the majority that the tax is not on an occupation. Also, not everyone who presents an amusement for gain is necessarily in the occupation of producing or conducting amusements. (*Town of Cicero v. Fox Valley Trotting Club, Inc.* (1976), 65 Ill. 2d 10, 22.)) Because the consumer of the amusement bears the incidence of the tax (as well as the economic burden (see *S. Bloom, Inc. v. Korshak* (1972), 52 Ill. 2d 56, 63)), I believe that the *exemptions from the tax must be based on that class of taxpayer (and not on the collector-operator).* In other words, classifications within the taxpaying group of consumers of amusement must "be based on real and substantial differences between persons taxed and those not taxed" (*Klein v. Hulman* (1966), 34 Ill. 2d 343, 347; *People ex rel. Holland Coal Co. v. Isaacs* (1961), 22 Ill. 2d 477, 481), and "must bear

some reasonable relationship to the object of the legislation" (*People ex rel. Holland Coal Co. v. Isaacs* (1961), 22 Ill. 2d 477, 480). (Exemptions and classifications are separate concepts under section 2 of article IX of the 1970 Constitution. (*Head v. Korshak* (1976), 62 Ill. 2d 226, 229.))

The exemptions here are not reasonable as required by the Illinois Constitution (art. IX, sec. 2). The rationale in *Board of Education v. City of Peoria,* above, is helpful. In that case, the circuit court held that ordinances providing for an amusement tax (the successor to the ordinance at issue here) and a tax "upon the privilege of purchasing food or alcohol" were unenforceable against the school district and park district of Peoria. After carefully noting that certain exemptions from nonproperty taxes would apply to the school and park district (*e.g.,* retailer sales made to governmental bodies are exempt from a retailers' occupation tax, and governmental bodies are exempt from paying the use tax on personal property purchased at retail), we held that the districts were not free to disregard collection of the taxes at issue because they fell "on the consumer, and cannot be considered as taxes imposed on another governmental unit." (76 Ill. 2d 469, 475.) As against the school district, however, we did hold that the tax ordinances constituted "an unauthorized regulation" contrary to section 1 of article X of the 1970 Illinois Constitution. (76 Ill. 2d 469, 478.) Had the tax incidence been on the districts themselves and a specific exemption existed on that basis, even though the economic burden would remain on the consumer (*S. Bloom, Inc. v. Korshak* (1972), 52 Ill. 2d 56, 63), the districts would have been exempt from payment. That is the case here: had the incidence of the tax, which is controlling (52 Ill. 2d 56, 63), been on the operators or sponsors, the exemptions would be reasonable, even though the economic burden of the taxes is passed on to the consumer. The exemptions

here simply have no nexus to the taxpayers.

If one views the question here as an attempt to classify the taxpayer or consumer, then the conclusion must be that the classification is unreasonable. There is no substantial difference—no difference whatsoever (except perhaps the intent)—between the taxpaying consumer of a movie at the Rialto and the nontaxpaying consumer of a movie sponsored by one of the exempt bodies in the defendant's tax ordinance (*Klein v. Hulman* (1966), 34 Ill. 2d 343, 347). The classification of a consumer on the basis of what entity is amusing him or her is specious, especially if one considers whether there is a "reasonable relationship to the object of the legislation" (*People ex rel. Holland Coal Co. v. Isaacs* (1961), 22 Ill. 2d 477, 480). Here, according to testimony by the mayor of Peoria and the corporation counsel, the object of the amusement-tax ordinance was to raise revenue; and both the incidence and economic burden of the tax were on the consumers of amusement. Yet the consumer, classified as attending a nonprofit group's movie, did not have to contribute to the city's coffers. The city argues that the activities of nonprofit associations lessen the city's burden of providing activities for the citizens and should therefore be encouraged by not requiring the associations to collect a tax from their patrons. This is not persuasive. I do not see how, so long as the tax and burden remain on the consumer, the nonprofit groups (or others "exempted" by the ordinance) would be harmed or discouraged from their good works. A taxpaying boxing enthusiast will attend a match (of equal caliber) whether sponsored by local, profit-seeking merchants or by the booster club of the local high school. The city also suggests that some of the "exempt" organizations might be incapable of actually collecting this tax. Overwhelming testimony, not refuted by the city, suggests the opposite.

I believe the "exemptions" set out in the ordinance, in

its original form and as amended, are virtually inseparable from the ordinance as a whole. Moreover, because the ordinance required that the tax be collected "from the consumer at the time he [*i.e.,* the operator] collects the admission or participation fee charged for the amusement," I must conclude the whole of the amusement tax ordinance is invalid under the Illinois Constitution (Ill. Const. 1970, art. IX, sec. 2).

I agree with the majority that the circuit court properly entered summary judgment in favor of the defendants on counts I and VI of the complaint. Testimony by the city's mayor and corporation counsel evidenced that the ordinance was enacted for revenue purposes. It was within the circuit court's competence to conclude the ordinance was not a special assessment. Plaintiffs' argument that a basic human right to witness an amusement was violated is frivolous. They fail to show how, to cite cases or constitutional provisions, or to do anything more than say so in a 6½-line paragraph. (Does the plaintiff suggest that property taxes violate the right to own property?)

For these reasons, I would affirm the judgment of the circuit court of Peoria County, and I concur in part and dissent in part.