SATELLINK OF CHICAGO, INC., Plaintiff-Appellee and Cross-Appellant, v. THE CITY OF CHICAGO et al., Defendants-Appellants and Cross-Appellees.

First District (2nd Division)   No. 86—2772

Opinion filed March 29, 1988.

Judson H. Miner, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Sharon Baldwin, Assistant Corporation Counsel, of counsel), for appellant City of Chicago.

James J. Casey and A. Benjamin Goldgar, both of Keck, Mahin & Cate, of Chicago, for appellee.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Summary judgment was entered for plaintiff invalidating an amendment of the Chicago amusement tax (the amendment) affecting "transmission or broadcast of programs by means of wire, radiowaves, microwaves *** by subscription television service," which defendants appeal. (See Chicago Municipal Code ch. 104, §104—1 (1984-85).) Plaintiff cross-appeals denial of attorney fees. The issues raised for review include whether: (1) the amendment denied plaintiff the equal protection of the law; and (2) the circuit court improperly denied attorney fees to plaintiff. Other issues raised need not be considered in light of our determination of the appeal.

Plaintiff, Satellink of Chicago, Inc. (Satellink), installs and operates satellite master antenna television (SMATV) systems for high-rise apartment buildings and provides television programming to residents of such buildings who subscribe and pay a fee. Satellink uses a central dish antenna that receives television signals from a fixed-orbit geostationary satellite. Satellite antennas may be located at the building site or signals may be received by microwave through small receiving antennas on top of the building. The signal is thereafter distributed by wire to resident subscribers. All plaintiff's equipment and operations are located within Chicago.

As of November 30, 1985, plaintiff provided service to 1,461 subscribers at 27 buildings within the City of Chicago, who received VHF channels 2, 5, 7, 9 and 11 and UHF channels 22, 26 and 32; only some also received UHF channels 60 and 66. Additionally, eight cable stations were available through five different service packages. Package fees ranged from $11.95 to $31.90 per month. During the year ending June 30, 1985, plaintiff's gross income of $584,825.98 included $335,437.78 from subscription and installation fees for programming and $249,388.20 from installation and maintenance of master antenna systems.

The amusement tax ordinance was amended effective March 3, 1985 (Chicago Municipal Code ch. 104, §104—1 (1984-85)), and reads, in part, as follows:

"(3) any transmission or broadcast of programs by means of wire, radiowaves, microwaves or otherwise for public entertainment, including but not limited to transmissions or broadcasts by subscription television service, but excluding any such trans-

mission or broadcast offered by any entity with whom the City has entered into or enters into a franchise agreement with respect to such transmissions or broadcasts."

The purpose of the amendment was "to provide for an expansion of the tax to subscription and cable television." (Journal of Proceedings of the City Council of the City of Chicago 13845 (February 20, 1985), 12270 (December 31, 1984).) The 4% admission fee tax is imposed on patrons of amusements and is to be collected by amusement operators. (Chicago Municipal Code ch. 104, §§104—2, 104—3 (1984).) Only cable systems are franchised by the city (Chicago Municipal Code ch. 113.1, §§113.1—2, 113.1—4 (1984)), which pay a 5% gross receipts fee (Chicago Municipal Code ch. 113.1, §113.1—17A (1984)).

Plaintiff's verified complaint, seeking declaratory and injunctive relief against defendants City of Chicago and Charles Sawyer, acting director of the Department of Revenue, alleged the amendment of the ordinance was preempted by Federal legislation and regulations, constituted an impermissible tax on interstate commerce, a violation of freedom of speech, a denial of equal protection, a violation of the Illinois Antitrust Act (Ill. Rev. Stat. 1985, ch. 38, par. 60—3(3)), an unreasonable classification in defiance of article IX, section 2, of the Illinois Constitution, and a tax on income or earnings and on occupations violating article VII, section 6(e), of the Illinois Constitution. All Federal claims were filed under 42 U.S.C. §1983 (1982). In addition, plaintiff sought attorney fees under 42 U.S.C. §1988 (1982).

Plaintiff's motion for a preliminary injunction and defendants' motion to strike and dismiss every count of the complaint were both denied by the circuit court except for the dismissal of the antitrust count of the complaint, count V. Defendants filed a verified answer on September 26, 1985.

Following discovery, both sides filed motions for summary judgment. On June 20, 1986, the circuit court granted summary judgment to plaintiff on count III on the basis of a first amendment violation, declared the amendment discriminatory on its face since it excluded cable operations with a franchise, and found that plaintiff's protected speech had been burdened by a revenue measure lacking an overriding governmental interest.

On September 18, 1986, the circuit court denied defendants' motion to reconsider and rejected plaintiff's motion for attorney fees. Defendants appeal the grant of summary judgment to plaintiff and plaintiff cross-appeals the denial of attorney fees.

I

█ The present case is controlled by application of an equal protection analysis, in connection with first amendment interests. (See *Carey v. Brown* (1980), 447 U.S. 455, 461-63, 65 L. Ed. 2d 263, 270-71, 100 S. Ct. 2286, 2290-91; *Police Department v. Mosley* (1972), 408 U.S. 92, 94-95, 33 L. Ed. 2d 212, 216, 92 S. Ct. 2286, 2289-90; *Chicago Tribune Co. v. Village of Downers Grove* (1987), 155 Ill. App. 3d 265, 271-72, 508 N.E.2d 439.) Although decided by the circuit court upon first amendment principles, judgment may be affirmed upon any ground warranted, whether relied upon by the circuit court or its reasoning was correct. *Bell v. Louisville & Nashville R.R. Co.* (1985), 106 Ill. 2d 135, 148, 478 N.E.2d 384; *Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9; *Kohls v. Maryland Casualty Co.* (1986), 144 Ill. App. 3d 642, 645, 494 N.E.2d 1174.

█ Defendants assert the amendment can withstand an equal protection challenge since its classifications are reasonable and do not violate article IX, section 2, of the Illinois Constitution, which provides (Ill. Const. 1970, art. IX, §2):

"In any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly. Exemptions, deductions, credits, refunds and other allowances shall be reasonable."

Defendants contend that legislative bodies have broad powers to classify and that since franchised cable television providers pay 5% of their gross receipts as a franchise fee, they reasonably may be exempted from the 4% admission fee tax that plaintiff must pay. Plaintiff insists that a fundamental right is involved requiring close scrutiny and that the amendment is not rationally related to a legitimate governmental interest.

When a fundamental right or suspect class is involved, a challenged statute must be shown to promote a compelling State interest. (*Illinois Housing Development Authority v. Van Meter* (1980), 82 Ill. 2d 116, 119-20, 412 N.E.2d 151; *Kaltsas v. City of North Chicago* (1987), 160 Ill. App. 3d 302, 306, 513 N.E.2d 438.) A classification must also have a rational relationship to a legitimate governmental interest. (*City of New Orleans v. Dukes* (1976), 427 U.S. 297, 303, 49 L. Ed. 2d 511, 516-17, 96 S. Ct. 2513, 2516-17; *Chicago National League Ball Club, Inc. v. Thompson* (1985), 108 Ill. 2d 357, 368, 483 N.E.2d 1245.) Persons similarly situated should be treated alike; however, in the absence of a fundamental right or suspect class, a legislature may

differentiate between those similarly situated provided that a rational basis exists for so doing. (*Jenkins v. Wu* (1984), 102 Ill. 2d 468, 477, 468 N.E.2d 1162; *People v. Watson* (1987), 118 Ill. 2d 62, 66-67, 514 N.E.2d 167.) A municipal ordinance must satisfy the same requirement of reasonableness as a legislative statute. *Chicago National League Ball Club, Inc. v. Thompson,* 108 Ill. 2d at 371.

■■ Legislative bodies possess broad discretion to establish reasonable classifications for taxation purposes. (*Lehnhausen v. Lake Shore Auto Parts Co.* (1973), 410 U.S. 356, 359-60, 35 L. Ed. 2d 351, 354-55, 93 S. Ct. 1001, 1003-04; *Madden v. Kentucky* (1940), 309 U.S. 83, 87, 84 L. Ed. 590, 592-93, 60 S. Ct. 406, 408; *Chicago Tribune Co. v. Johnson* (1985), 106 Ill. 2d 63, 71, 477 N.E.2d 482, *appeal dismissed* (1985), 474 U.S. 915, 88 L. Ed. 2d 250, 106 S. Ct. 241.) Equal protection does not require identical tax treatment. (*Searle Pharmaceuticals, Inc. v. Department of Revenue* (1987), 117 Ill. 2d 454, 465, 512 N.E.2d 1240.) There is a presumption of legislative tax classification validity. *Williams v. City of Chicago* (1977), 66 Ill. 2d 423, 432, 362 N.E.2d 1030, *cert. denied* (1977), 434 U.S. 924, 54 L. Ed. 2d 282, 98 S. Ct. 402.

Notwithstanding the foregoing principles, a discriminatory tax law cannot be upheld if the classification involved is altogether illusory. (*F. S. Royster Guano Co. v. Virginia* (1920), 253 U.S. 412, 415, 64 L. Ed. 989, 990-91, 40 S. Ct. 560, 561-62.) Reasonable tax classifications must be based upon real and substantial differences between those taxed and not taxed. (*Chicago Tribune Co. v. Johnson,* 106 Ill. 2d at 71-72; *Fiorito v. Jones* (1968), 39 Ill. 2d 531, 535-36, 236 N.E.2d 698.) The determination to tax certain entities and not others must not be arbitrary. *Springfield Rare Coin Galleries, Inc. v. Johnson* (1986), 115 Ill. 2d 221, 231, 503 N.E.2d 300.

■■ Here, franchised cable television and subscription television provide essentially the same service to their viewers. The type of programming furnished is the same: movies, sports, news, and entertainment. The channels in the special packages Satellink offers are available on cable. No difference is apparent in the activities of franchised cable television and subscription television. See *People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.* (1986), 114 Ill. 2d 252, 261, 500 N.E.2d 34.

Defendants' assertion that a difference exists due to the franchise granted to cable television and the resulting special burden of the city franchise fee that cable television must pay merely reflects upon the value and benefits of the franchise itself and does not provide a reasonable basis for differential taxation. A fee provides compensation

for a benefit or for services rendered. (*National Cable Television Association, Inc. v. United States* (1974), 415 U.S. 336, 340-41, 39 L. Ed. 2d 370, 375, 94 S. Ct. 1146, 1149; *Crocker v. Finley* (1984), 99 Ill. 2d 444, 452, 459 N.E.2d 1346.) The franchise fee for cable television in this case is based upon the benefit of "use of City streets and other public ways." Chicago Municipal Code ch. 113.1, §§113.1—2B, 113.1—17A (1984).

Merely paying a franchise fee does not justify an exemption from taxation. Nothing in the record indicates that cable television franchises are exempt from other city taxes. The amount of the amusement tax (4% of admission fees) is not equal to the franchise fee (5% of gross receipts). There is no provision for the amusement tax on subscription television to be automatically adjusted if the franchise fee for cable television increases or decreases. The distinction defendants try to make between cable television and subscription television, based on the franchise fee, cannot justify the amendment as a rational attempt to provide an equitable taxing system. Instead, this is the kind of arbitrary legislative choice the equal protection clause forbids (*Reed v. Reed* (1971), 404 U.S. 71, 76, 30 L. Ed. 2d 225, 229-30, 92 S. Ct. 251, 254) and bears no reasonable relationship to the ordinance's taxing purpose (*North Sheffield, Inc. v. City of Chicago* (1986), 144 Ill. App. 3d 913, 920, 494 N.E.2d 711, *appeal denied* (1986), 112 Ill. 2d 579).

Although an exemption for proceeds of amusements benefitting religious, educational and charitable organizations and governmental bodies was upheld in *Kerasotes Rialto Theater Corp v. City of Peoria* (1979), 77 Ill. 2d 491, 494-98, 397 N.E.2d 790, upon which defendants rely, the exemption for institutions was intended to benefit the community as a whole. Unlike *Kerasotes,* no exemption based on nonprofit community service is here involved, nor do defendants contend that the exemption granted franchised cable companies so benefits the community.

■■ Informing and entertaining are both protected by freedom of speech and of the press (*Winters v. New York* (1948), 333 U.S. 507, 510, 92 L. Ed. 840, 847, 68 S. Ct. 665, 667); activities such as cable and satellite subscription television implicate first amendment interests (see *City of Los Angeles v. Preferred Communications, Inc.* (1986), 476 U.S. 488, 494-95, 90 L. Ed. 2d 480, 487, 106 S. Ct. 2034, 2037). Defendants agree that operating SMATV systems is protected by the first amendment guarantees. The due process clause of the fourteenth amendment applies these protections to the States. *Near v. Minnesota* (1931), 283 U.S. 697, 707, 75 L. Ed. 1357, 1362-63, 51 S. Ct. 625, 628.

█ Targeting first amendment entities such as individual members of the media has been condemned on first and fourteenth amendment grounds. (*Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue* (1983), 460 U.S. 575, 591-93, 75 L. Ed. 2d 295, 308-09, 103 S. Ct. 1365, 1375-76; see *Arkansas Writers' Project, Inc. v. Ragland* (1987), 481 U.S. 221, 95 L. Ed. 2d 209, 107 S. Ct. 1722.) The amendment in the present case targets subscription television by exempting cable television. No compelling government interest has been shown which justifies such action. Neither raising revenue nor equalizing the financial burden on cable television can support the targeting of subscription television. The amendment does not withstand an equal protection challenge regardless of the degree of scrutiny employed. See *Haughton v. Haughton* (1979), 76 Ill. 2d 439, 445-46, 394 N.E.2d 385, *cert. denied* (1980), 444 U.S. 1102, 62 L. Ed. 2d 789, 100 S. Ct. 1069.

For the foregoing reasons the amendment to the Chicago amusement tax must be held unconstitutional, and the circuit court's disposition accordingly is affirmed.

## II

On cross-appeal plaintiff requests attorney fees since its Federal constitutional claims were made under 42 U.S.C. §1983 (1982). In actions to enforce section 1983, a court may at its discretion award the successful party a reasonable attorney fee. (42 U.S.C. §1988 (1982).) Defendants agree that, if plaintiff prevails on its section 1983 Federal constitutional claims, plaintiff is entitled to such a fee.

█ Courts have little discretion in awarding attorney fees under 42 U.S.C. §1988 (1982); fees ordinarily should be awarded barring special circumstances. (*Lenard v. Argento* (7th Cir. 1983), 699 F.2d 874, 899, *cert. denied* (1983), 464 U.S. 815, 78 L. Ed. 2d 84, 104 S. Ct. 69; *J & J Anderson, Inc. v. Town of Erie* (10th Cir. 1985), 767 F.2d 1469, 1474.) No such special circumstances are presented in the case at bar, and the circuit court's denial of such fees must be vacated. The case, therefore, must be remanded for the circuit court's determination of proper attorney fees.

In light of the foregoing, the decision of the circuit court is affirmed in part and vacated in part and the cause is remanded for the determination of appropriate attorney fees.

Affirmed in part; vacated in part and remanded.

STAMOS and BILANDIC, JJ., concur.